Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Donald E. Walter | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1878 | **DATE** | 8/26/2002 |
| **CASE TITLE** | Joann T. Duble vs. Aramark Educational, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Ruling: Defendant's motion for summary judgment (7-1) is granted. Enter judgment. Any other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court | | number of notices | |
| | No notices required | | AUG 28 2002 | |
| ✓ | Notices mailed by judge's staff | | date docketed | 33 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | 8/27/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | GL courtroom deputy's initials | U.S. DISTRICT COURT | GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOANN T. DUBLE | CIVIL ACTION NO. 01-1878 |
| VERSUS | JUDGE DONALD E. WALTER |
| ARAMARK EDUCATIONAL RESOURCES, INC., d/b/a CHILDREN'S WORLD LEARNING CENTER, INC., and TAMMIE COTTER | **DOCKETED** AUG 2 8 2002 |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. 7], filed on behalf of the Defendants ARAMARK Educational Resources, Inc. d/b/a Children's World Learning Center, Inc. (CWLC) and Tammie Cotter (Cotter), pursuant to Federal Rules of Civil Procedure 56. Plaintiff, Joann T. Duble (Duble), opposes the motion [Doc. 21]. The Defendants have filed a response [Doc. 24]. For the reasons assigned herein, the Defendant's Motion for Summary Judgment is GRANTED.

## STATEMENT OF THE CASE

CWLC is in the business of childcare and education, and has a place of business in Arlington Heights, Illinois. (Pl.'s Statement Facts, ¶ 3 [Doc. 23]). Cotter is employed by CWLC and became Director of CWLC's Arlington Heights facility on or about February 1996. (Def.'s Statement Facts, ¶ 7 (unoppposed) [Doc. 8]). As director of CWLC's Arlington Heights facility, Cotter is responsible for interviewing, hiring, disciplining and discharging employees. (Pl.'s Statement Facts, ¶ 6).

Plaintiff, Duble, was born on October 3, 1944. (Id. at ¶ 15). Duble was hired by Cotter as an Assistant Teacher at CWLC on or about December 10, 1996. From approximately January

1999 until her discharge on April 24, 2000, Duble worked in the room for 3-year-old children. Jason Nevil (Nevil) was a lead teacher with whom Duble worked in the room for 3-year-olds. (Def.'s Statement Facts (unopposed), ¶¶ 12, 16, 18). Duble was fifty-two (52) when Cotter hired her and fifty-five (55) when she was involuntarily terminated. Cotter was born August 7, 1968 and was thirty-one (31) at the time of Plaintiff's dismissal. (Pl.'s Statement Facts, ¶¶ 10-11, 14).

As Director of CWLC, Cotter was responsible for evaluating the performance of all the teachers, including Plaintiff's performance as an Assistant Teacher. (Id. at ¶¶ 15-16). Though Duble's first evaluation, dated March 19, 1997, was positive and listed her strengths as awareness of rules, organization, accountability, and dependability (Id. at ¶ 82), it also noted that Duble needed to focus on more interaction with the children.[1] A very similar sort of review followed in Duble's December 19, 1997 evaluation, wherein many positives were mixed in with exhortations to interact with the children.[2] Again, at plaintiff's next evaluation on March 11, 1999, the same sort of evaluation ensued, though this review appeared slightly more critical.[3]

During the week of March 6, 2000, Cotter received a complaint about Duble from a parent. (Def.'s Statement Facts (unopposed), ¶ 45). Though disputed, Duble admits that a parent observed her child imitating Duble with a doll and finding the behavior disturbing, the parent

---

[1] Duble's March 19, 1997 evaluation included the following: "Focus on being more involved with kids in a.m!! Noticed on occasions crying children and you hanging things, etc." (Def.'s Statement Facts (unopposed), ¶ 26); and, "Your hard work is evident in the classroom. Make sure you take time to enjoy the children! Interact more." (Id. (unopposed in part), ¶ 27; Pl.'s Reply to Statement Facts, ¶ 27).

[2] See Def.'s Statement Facts, ¶¶ 32-34; Pl.'s Reply to Statement Facts, ¶¶ 32-34.

[3] In the March 11, 1999 evaluation, Cotter wrote, "Be with children more." (Def.'s Statement Facts (unopposed in part), ¶ 39). She also wrote, "Some co-workers have shown concern about your efforts and teamwork. What's going on?" (Id. at 40). See also Pl.'s Reply to Statement Facts, ¶¶ 39-40.

2

decided to call CWLC.[4] Following this incident, Cotter discussed with Duble her use of the words "no" and "don't" with the children. (Pl.'s Reply Def.'s Statement Facts, ¶ 49 [Doc. 22]). The parties dispute whether this discussion included a verbal warning. Nonetheless, Duble's deposition clearly reveals that in connection with this incident she signed a written warning and that she viewed it as an instance of "discipline." (Def.'s Statement Facts, Duble dep., Ex. J, pp. 139-142). During this same interlude, Cotter also told Duble that other teachers described her as short-tempered with the children. (Id. at 143). After Duble was disciplined in March 2000 for this allegedly "inappropriate conduct," Cotter told Duble that "there was going to be eyes on [her] watching [her] from there on." (Pl.'s Statement Facts, ¶ 125).

On or about April 24, 2000 another incident ensued, which culminated in Duble's termination. When asked in her deposition about the circumstances surrounding her termination, Duble responded as follows:

> By 10:00 in the morning we went outside to play with the children, and as I recall, . . . [Nevil] left me alone with the children outside. . . . It was time to get the children in line to come back inside and I had to take a head count. . . I was one child short and this child was playing on the swing set, and I had called her to come to get in line and she wouldn't come. . . .
> Finally, when she got to get in line, I told her she had to stay in line so I can take a head count, and she says, 'No.' I said, Cally, you need to stay in line so we can count," and I took her by the hand and I'm holding her, and she started kicking me and I told her to stop. 'No, no,' she kept screaming, 'I don't want to go outside.' . . .
> She was just standing there screaming, and Mr. Jason had walked into the door and he said, 'Cally, why are you screaming like that?' and she said, 'Ms. Joann hurt me.' I said, 'Cally, I didn't touch you,' and she just started ranting and raging and stomping her feet (Pl.'s Statement Facts, Duble dep., Ex. F, pp. 149-50).

---

[4] See Pl.'s Statement Facts, Duble dep., Ex. F, pg. 140. The parent allegedly told Cotter that her child grabbed a doll's face and harshly said, "No!" The parent indicated that, according to her child, Duble does this when children don't listen. (Def.'s Statement Facts (opposed), ¶46; Cotter dep., Ex. C, pp. 65, 107). The parent also told Cotter that she wanted to remain anonymous out of concern that her child would be treated differently had Duble known who complained. (Cotter dep., pp. 107-08).

Plaintiff conclusively denies the affidavit and deposition testimony of Nevil, Cotter and Alissa Kuhlman concerning the incident, such as their sworn statements that they had seen a red mark on Callie's upper arm and believed that Duble had left that mark. Nonetheless, it is undisputed that Callie was crying, that Callie complained that Duble had hurt her, and that after conversations with Nevil, Callie and Duble, and her personal examination of Callie's arm, Cotter decided to terminate plaintiff's employment. (Def.'s Statement Facts, Cotter dep., Ex. C, pp. 115, 118). Cotter only recollects terminating one other teacher for inappropriate behavior, that being 30 year-old Steve Price. (Pl.'s Statement Facts, ¶ 19).

Cotter's supervisor, Nancy Arvidson, was familiar with the first and second complaints involving Duble, and agreed with Cotter's decision to terminate Duble's employment (Def.'s Statement Facts, ¶¶ 96-98; Arvidson Aff., Ex. P, ¶¶ 4-12; Cotter Aff., Ex. D, ¶¶ 34, 38-39). Kathy Whiting was CWLC's Manager of Regulatory Affairs and was responsible for assisting Center Directors such as Cotter with employment issues of discipline and discharge. She was also familiar with the first and second complaints involving Duble. Whiting informed Cotter that it is CWLC's practice to terminate an employee for a first complaint of inappropriate conduct if it is sufficiently severe. If a first instance is less severe, they normally issue a warning that further complaints would result in termination. Whiting indicated that consistent with this policy, she has recommended terminating employees based on a first complaint of inappropriate grabbing of a child. She also stated in her affidavit that Cotter's decision was consistent with CWLC policy and was in the best interest of the children. (Def.'s Statement Facts, Whiting Aff., Ex. Q, ¶¶ 1-4, 9-12).

Duble also complains of being left alone in a classroom with children on several

occasions and that the classrooms had high student to teacher ratios, which she asserts were violations of state law. Duble also asserts that she told Cotter on many occasions that she was uncomfortable working in a classroom without a Head Teacher present. (Pl.'s Statement Facts, ¶¶ 100-05).

Duble also urges the following assertions as evidence of age discrimination. While Duble was employed, Cotter informed other employees in response to questions regarding a shingle in Duble's eye that they did not need to worry because that only happens in older people. (Id. at ¶ 113). Duble often heard Cotter tell parents that Duble was "one of our older teachers" and that she had "been teaching for so many years." (Id. at ¶ 110). After Duble's termination, Cotter was reported to have responded to a parent inquiring about Duble's termination with, "Oh well, Miss Joann isn't here anymore besides she's from the old school." (Id. at ¶ 112). Duble was the oldest employee at Children's World Learning Center at the time of her termination. (Id. at ¶ 115).

It is for these reasons that Plaintiff believes her termination was based upon her age and / or based upon Cotter's desire to get rid of Duble because of her complaints about violations of state law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. King v. Nat'l Human Res. Comm., Inc., 218 F.3d 719, 723 (7th Cir. 2000); Fed. R. Civ. P. 56(c). Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999); Fed. R. Civ. P. 56(e). The court considers the record as a whole and draws all reasonable inferences

in the light most favorable to the nonmoving party. Bay v. Cassens Transp., Co., 212 F.3d 969, 972 (7th Cir. 2000). This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1162 (7th Cir. 1994).

A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. The mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986); Insolia v. Phillip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000). If the moving party meets this burden, the nonmovant must then respond by setting forth specific facts that demonstrate the existence of a genuine issue for trial. However, self-serving assertions, without factual support in the record, are insufficient to defeat a summary judgment motion. James v. Sheahan, 137 F.3d 1003, 1006 (7th Cir. 1998).

## LAW AND ANALYSIS

### I. Duble's ADEA claim fails as a matter of law.

#### A. Duble has not made out a claim of age discrimination under the direct method.

Plaintiff claims that her employment was terminated by Defendants because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §622, *et seq.* In order to prevail on an ADEA claim, Duble must demonstrate that her age was a determining factor in the decision to discharge her; that is, she would not have been discharged but for her age. Fuka v. Thomson Consumer Elecs., 82 F.3d 1397, 1402 (7th Cir. 1996).

Plaintiff can make out her claim of age discrimination directly or indirectly. In Huff v. UARCO, Inc., 122 F.3d 374 (7th Cir. 1997), the court stated that under "the direct proof method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." Id. at 380. The only direct evidence Duble has presented are Cotter's statements

6

and the fact that Duble complained about violations of state law, which is not age related. As in Huff, in a direct case, such remarks - unrelated to the decision to terminate Duble - are not probative of the employer's intent and do not indicate an age-biased intent in CWLC's decision to terminate Duble's employment. Id. at 384. *See also* Fuka, 82 F.3d at 1402-03. Therefore, Duble has not made out a case of age discrimination under the direct method.

### B. Duble has not established a *prima facie* case of age discrimination.

Unlawful discrimination must be proved through direct evidence of an impermissible motive, or indirectly through the McDonnell Douglas[5] burden-shifting method.[6] As Duble has not met her burden through direct evidence, the Court turns to the McDonnell Douglas analysis. Under this burden-shifting analysis, Duble must first establish a *prima facie* case of age discrimination, by demonstrating that: (1) she was in the protected age group; (2) that she was performing to her employer's legitimate expectations; (3) that she was discharged; and (4) that younger employees were treated more favorably. Fuka, 82 F.3d at 1404.

### 1. Duble was not satisfactorily performing the duties of her job.

If an age discrimination plaintiff fails to demonstrate that she was meeting her employer's legitimate employment expectations at the time of her termination, the employer may not be put to the burden of stating the reasons for her termination. Peele v. Country Mut. Ins. Co., 288 F.3d 319, 328 (7th Cir. 2002). Stated in another manner, in order to meet her burden of establishing a *prima facie* case of discriminatory discharge, Duble must demonstrate that she was qualified for and satisfactorily performing the duties of her job. *See* Kizer v. Children's Learning Ctr., 962 F.2d 608, 612 (7th Cir. 1992). In this case, CWLC purportedly terminated Duble's employment for inappropriate behavior towards a child. This was the second incident involving plaintiff and a child under her care. Duble admitted that it is inappropriate and against CWLC's policy to grab a child by the arm. Whiting, Manager of Regulatory Affairs at the time of Duble's termination,

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[6] The McDonnell Douglas framework applies to ADEA claims. *See* Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871, 875 (7th Cir. 2002).

7

stated that under CWLC's policy, any CWLC employee who was reported to have hurt a child by grabbing the child's arm in a manner that left red marks should be discharged. Plaintiff has not demonstrated that she was meeting CWLC's legitimate business expectations at the time of her discharge.

### 2. Duble has not shown that she was treated differently than a similarly situated person outside of her class.

Plaintiff has not shown that any similarly younger employees were treated more favorably.[7] In fact, Duble has pointed out that another thirty (30) year old CWLC employee was fired for similar reasons. This supports Defendant's position that their actions were standard CWLC procedure. Duble has not met her burden on this element of her *prima facie* case. *See* Bush v. Commonwealth Edison Co., 990 F.2d 928, 931 (7th Cir. 1993). For these reasons, plaintiff fails to set forth a *prima facie* case of age discrimination as a matter of law.

### C. Assuming *arguendo*, that Duble has established a *prima facie* case, plaintiff has failed to demonstrate that the reasons given by her employer were pretextual.

Duble may demonstrate pretext "by producing evidence that the proferred reason is false, either because it has no basis in fact or because it did not actually motivate her discharge." Fuka, 82 F.3d at 1404. Stated another way, Duble must establish that an improper motive tipped the balance in favor of discharge. It is insufficient for the employee to show that the employer acted incorrectly or undesirably by firing her. Instead the employee must show that the employer did not honestly believe in the reasons it gave for the termination of employment. Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871, 876 (7th Cir. 2002).

Duble has pointed to Cotter's age-related statements as evidence of pretext. While "such

---

[7] The Court notes that this is a not a reduction in force case.

8

evidence is probative of discriminatory bias when assessing whether an employer's reasons for an adverse employment action are pretextual. . . . [E]ven in an indirect proof case, remarks unrelated to the employment decision in question may not overcome summary judgment if they stand alone as evidence of the employer's discriminatory intent." Huff, 122 F.3d at 385. The Court finds that these statements are Duble's only evidence of age discrimination and standing alone they are insufficient to demonstrate pretext.

Plaintiff has shown that she received many positive evaluations and parents have made positive comments regarding her performance with CWLC. However, as this Court has pointed out, "employers may act for many reasons, good and bad; they may err in evaluating employee's strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter." Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir. 1996).[8] Such evidence of positive evaluations and commentary would be much more probative in a case wherein Duble's discharge resulted from alleged poor performance and/or reviews and not from inappropriate conduct.

Duble has conclusively disputed some of the factual details surrounding the incident culminating in her termination, but she has not demonstrated that her employer did not honestly believe in the validity of those reasons and that a reason other than her inappropriate behavior with children, tipped the balance in favor of discharge. Carter both hired and made the ultimate decision to terminate Duble. There is Seventh Circuit ADEA precedent which supports the proposition that an inference of non-discrimination arises when the hirer and firer are one and the same. This is referred to as the "same-actor inference." *See* discussion in Johnson v. Zema

---

[8] This Court does not sit as a super-personnel department that reexamines an entities business decisions. Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986).

9

Systems Corp., 170 F.3d 734, 744-45 (7th Cir. 1999). In addition, Duble indicates in her deposition that the primary reason she thought she was fired was because she was a "troublemaker" and not primarily because of her age.[9]

CWLC had a policy which dealt with inappropriate behavior. It is CWLC's practice to terminate an employee for a first complaint of inappropriate conduct if it is sufficiently severe. If a first instance is less severe, a warning is normally issued and it is indicated that further complaints would result in termination. As previously mentioned, Whiting stated that under CWLC's practices, any CWLC employee who was reported to have hurt a child by grabbing the child's arm in a manner that left red marks would be discharged. Duble has admitted that another CWLC employee was discharged previously for similar actions. Pretext, for purposes of establishing age or disability discrimination under ADA or ADEA, requires more than a showing that employer's decision was mistaken, ill-considered or foolish, and so long as the employer honestly believed those reasons, pretext has not been shown. Nawrot v. CPC Int'l, 277 F.3d 896, 906 (7th Cir. 2002). Duble has not demonstrated that Cotter, Whiting and/or Arvidson were motivated by an impermissible motive and not by their belief that Duble had engaged in inappropriate conduct with the children she was charged to keep. As such, there was no pretext in Defendant's motive. Accordingly, for the reasons stated above, Duble's claim under the ADEA is DISMISSED.

---

[9] The following excerpt from plaintiff's deposition is insightful to wit: "Q. I think you had identified these two incidents we talked about . . . as evidence that you were being set up by Mx. Tammie and/or Ms. Alyssa. Can you tell me why you think the grabbing of the face was evidence that you were being set up by Tammie. A. I believe she was tired of hearing from me complaining about being alone in the room, looking for a head teacher . . . and finally I think she just got fed up with it because I was speaking up. . . . She felt, well, I'm not going to do things anymore. I'm going to – so I think that she just set me up and, "Let's get rid of her," that I'll be a troublemaker. Q. Does that have anything to do with your age? A. Yes, because I was the oldest one in the building. Q. Any other reason why it has anything to do with your age? A. No." In reference to the second incident, a very similar colloquy ensued. (Def.'s Statement Facts, Duble dep., Ex. J, pp. 158-160).

## II. Plaintiff cannot establish a claim of intentional interference with employment.

Under Illinois law, "the elements necessary to support a claim for intentional interference with employment are: (1) reasonable expectation of continued employment; (2) knowledge of the business relationship by the interferer; (3) intentional interference; and (4) resultant damage." Hegy v. Cmty. Counseling Ctr. of Fox Valley, 158 F.Supp.2d 892, 896 (N.D. Ill. 2001), *citing* Marczak v. Drexel Nat'l Bank, 186 Ill.App.3d 640 (1989).

Duble had no reasonable expectation of continued employment. After Cotter's first warning on March 9th, 2000, plaintiff should have been aware that she was not guaranteed her position and her future performance would be under scrutiny. Plaintiff even asserted that at that time Cotter told her that "there was going to be eyes on [her] watching [her] from there on." (Pl.'s Statement Facts, ¶ 125).

Neither can Duble demonstrate the third element of her claim, as Cotter's action was privileged. Corporate officers, supervisors and co-workers are privileged to act on behalf of the corporation, using their best judgment." Naeemullah v. Citicorp Serv., Inc., 78 F.Supp.2d 783, 793 (N.D. Ill. 1999) *(citations omitted)*. The qualified privilege to discharge an employee without incurring liability for interference with contractual rights or business expectancy is only overcome if the defendant acted for her own personal interest and contrary to best interest of corporation. *See* Chapman v. Crown Glass Corp., 557 N.E.2d 256 (1st Dist. 1990). In other words, to overcome this privilege, the interference must involve some type of impropriety. Harris v. Franklin-Williamson Human Serv., Inc., 97 F.Supp.2d 892, 908 (S.D. Ill. 2000).

Cotter is the Director of CWLC and was privileged to interfere with Duble's employment relationship. Plaintiff has not presented any evidence that Cotter's decision to discharge her was contrary to the interests of CWLC or that is was motivated solely by personal interest. The Court recognizes that Duble voiced several complaints to Cotter, however, no evidence has been presented which demonstrates that this created an improper motive behind Duble's dismissal.

11

Thus, Plaintiff is unable to show that Defendant's termination of her employment was an intentional interference with her employment relationship. Accordingly, this claim is DISMISSED.

## CONCLUSION

For the foregoing reasons, the Court finds that the Defendant's Motion for Summary Judgment [Doc. 7] must be GRANTED.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26 day of August 2002.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| JOANN T. DUBLE | CIVIL ACTION NO. 01-1878 |
|---|---|
| VERSUS | JUDGE DONALD E. WALTER |
| ARAMARK EDUCATIONAL RESOURCES, INC., d/b/a CHILDREN'S WORLD LEARNING CENTER, INC., and TAMMIE COTTER | DOCKETED AUG 2 8 2002 |

## JUDGMENT

For the reasons assigned in the foregoing Memorandum Ruling, **IT IS ORDERED** that

Defendant's Motion for Summary Judgment [Doc. 7] be and is hereby **GRANTED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26 day of August 2002.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE